# United States District Court

## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JEREMY PARR et al. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2378-S |
| | § | |
| STEVENS TRANSPORT, INC. et al. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Memorandum Opinion and Order addresses Defendants Stevens Transports, Inc. and Stevens Transport CD, Inc.'s Motion to Compel Individual Arbitration [ECF No. 71]. For the following reasons, the Court grants the Motion.

### I.      BACKGROUND

This is a putative wage-and-hour class action brought by Plaintiffs Jeremy Parr ("Parr"), Ronald Castle ("Castle"), and Julie Vines ("Vines") (collectively, "Plaintiffs") against Defendants Stevens Transport, Inc. ("STI"), Stevens Transport CD, Inc. ("CD"), and Does 1-10 (collectively, "Defendants") under California law. *See* Second Am. Compl. ¶ 1. STI and CD, Texas corporations engaged in the hauling and delivery of freight, allegedly hired Parr, Castle, and Vines as truck drivers. *See id.* ¶¶ 12, 15, 18, 22-25; Defs.' App. 7-12. Specifically, Defendants: hired Parr, a resident of Missouri or Texas,[1] and Castle, a resident of Arizona, as employees; and, entered into an independent contractor arrangement with Vines, a resident of Texas. *See* Second Am. Compl. ¶¶ 11, 14, 17; Defs.' App. 10, 12.

Importantly, individuals employed with STI, like Parr and Castle, attend a three-day orientation in Texas, where they execute certain paperwork and enter into a Mutual Agreement to Arbitrate Claims (the "Arbitration Agreement"). *See* Defs.' App. 9-10, 15-17. CD's independent

---

[1] While Plaintiffs allege that Parr is a resident of Missouri, Parr's employment application and his Commercial Driver's License issued by the state of Texas listed a home address in Brenham, Texas. *See* Defs.' App. 15, 20.

contractors, like Vines, are individuals who own or lease their own trucks, and who enter into independent contractor agreements with CD in Texas that include the Arbitration Agreement. *See id.* at 11. Defendants allow employees and independent contractors to ask questions about the Arbitration Agreement, to take it home for further review, and to discuss it with others, including an attorney. *See id.* at 69, 84, 99. In fact, the Arbitration Agreement requires the signatory to acknowledge that he or she "ha[s] been given the opportunity to discuss [the Arbitration] [A]greement with [his or her] private legal counsel" and that the signatory has "availed [him- or herself] of that opportunity to the extent" desired. *Id.* at 27, 39, 65. Parr, Castle, and Vine each signed the Arbitration Agreement with either STI or CD while in Texas. *See id.* at 15-17, 21-28, 33-40, 46, 59-66.

These agreements provided, in relevant part, that:

> The Company and [Plaintiff] mutually consent to the resolution of all claims or controversies ("claims"), whether or not arising out of [Plaintiff's] employment (or its termination), that the Company may have against [Plaintiff] or that [Plaintiff] may have against the Company and/or its officers, directors, employees or agents. . . . includ[ing] . . . claims for wages or other compensation due; . . . and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance . . . .

*Id.* at 22, 34, 60. According to the Arbitration Agreement, arbitration was to occur "under the auspices of . . . Judicial Workplace Arbitration, Inc.'s *Rules & Procedures for Arbitration,*" *id.* at 25, 37, 63, and Defendants would "pay the fees and costs of the arbitrator and the arbitration hearing," *id.* at 26, 38, 64. Additionally, each agreement included an express class action waiver:

> [Plaintiff] understand[s] and agree[s] that there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class action and/or as a collective action (the "Class Action Waiver"). . . . [O]nly a court and not the arbitrator shall determine any issues or claims related to the applicability, enforceability, or formation of this Class Action Waiver, including but not limited to any claim that all or part of this Class Action Waiver is void or voidable.

> If the Class Action Waiver is deemed to be unenforceable for any reason, the Company and [Plaintiff] agree that this [Arbitration] Agreement is otherwise silent

2

> as to any party's ability to bring a class and/or collective action in arbitration in so far as there has been no agreement between the parties on whether this Agreement permits class arbitration. If the Class Action Waiver is deemed to be unenforceable, the question of whether this [Arbitration] Agreement permits any dispute to be arbitrated as a class or collective action shall be determined only by a court and not by an arbitrator. All other questions of interpretation, applicability, enforcement or formation of this Agreement shall be determined by the arbitrator, as stated in the section entitled "Arbitration Procedures."

*Id.* at 23, 35, 61. The agreements also contained forum-selection and choice-of-law provisions, that required arbitration to take place in Dallas, Texas, under "the substantive law (and the law of remedies, if applicable) of the State of Texas, or federal law, or both." *Id.* at 25, 37, 63. Finally, the Arbitration Agreement delegated all issues, other than those pertaining to the class waiver, to the arbitrator:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this [Arbitration] Agreement including, but not limited to any claim that all or any part of this [Arbitration] Agreement is void or voidable. However, as stated in the "Class Action Waiver" section above, the preceding sentence shall not apply to the clause entitled "Class Action Waiver."

*Id.* at 25, 37, 63.

Based on the parties' Arbitration Agreement, Defendants filed the present Motion to Compel Individual Arbitration, which is now ripe and before the Court.

## II.   ANALYSIS

### A.   *Choice of Law*

As the parties agree, state law, rather than federal law, dictates the enforceability of the arbitration agreement and the class-action waiver, because Plaintiffs are interstate truck drivers who qualify for the Federal Arbitration Act's "transportation worker" exemption. *See Shanks v. Swift Transp. Co.*, Civ. A. L-07-55, 2008 WL 2513056, at *4 (S.D. Tex. June 19, 2008) (collecting authorities). The parties disagree, however, as to whether Texas law or California law applies. *See* Mot. 9 (arguing that Texas law applies); Resp. 8-12 (arguing that California law applies). In

resolving this issue, the Court applies California's conflict-of-law rules because this case was transferred to this Court under 28 U.S.C. § 1404. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964).

Under California law, in cases where the parties have entered into a contractual choice-of-law clause:

> [T]he party advocating application of the choice-of-law provision . . . has the burden of establishing either (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) another reasonable basis for the parties' choice of law. If [the party] makes this showing, the burden then shifts to the party opposing enforcement of the choice-of-law provision . . . to demonstrate [that] 'the chosen state's law is contrary to a *fundamental* policy of California' and that 'California has a materially greater interest than the chosen state in the determination of the particular issue.' Accordingly, 'the parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue.

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins.*, 88 F. Supp. 3d 1156, 1166 (S.D. Cal. 2015) (citations omitted) (quoting *Wash. Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1078-79 (Cal. 2001)). Here, the fact that Defendants are Texas corporations "is sufficient under California choice of law rules to establish a 'substantial relationship' between the chosen law and the parties to the dispute." *Abat v. Chase Bank USA, N.A.*, Case No.: SACV 07-01476-CJC(ANx), 2010 WL 11465416, at *1 (C.D. Cal. Oct. 28, 2010) (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 467 (Cal. 1992)). Thus, the sole issue is whether Plaintiffs demonstrated *both* that Texas's law is contrary to a fundamental policy of California and that California has a materially greater interest than the chosen state in the determination of the particular issue. *See id.* (citing *Wash. Mut. Bank*, 15 P.3d at 1078-79).

The Court finds that Plaintiffs did not demonstrate that California has a materially greater interest than the chosen state in the determination of the enforceability of the Arbitration

4

Agreement and class-action waiver.[2]  "[P]laintiffs' own contacts with [California] are dubious."
ECF No. 48 at 6 (opinion of the Northern District of California).  Plaintiffs are not California
residents.  *See* Second Am. Compl. ¶¶ 11, 14, 17; Defs.' App. 10, 12.  Parr logged 10.2% of his
mileage in California over 7 months; Castle logged 10.4% over 3.5 years; and Vines logged 6.55%
over almost 4 years.  *See* Defs.' App. 10, 15-16, 45-46.  Similarly, the Arbitration Agreements at
issue were signed while Plaintiffs were physically in Texas.  *See id.* at 9-11, 15-17.  Defendants
are incorporated and headquartered in Texas, manage their business activities and operations in
Texas, and retain drivers as Texas employees for purposes of unemployment and workers'
compensation.  *See* Second Am. Compl. ¶¶ 12, 15, 18, 22-25; Defs.' App. 7-12.  Of Defendants'
drivers, 9 out of 3,248 were California residents, while 1,122 were Texas residents; similarly, 8
out of 1,176 independent contractors were California residents, while 404 were Texas residents
*See* Defs.' App. 10  46.  Given the parties' significant interaction with Texas and minimal
interaction with California, the Court finds that California does not have a materially greater
interest in determining the enforceability of the arbitration agreement and the class-action waiver.
*See McKinney v. Google, Inc.*, No. C 10-01177 JW, 2010 WL 11489027, at *3 (N.D. Cal. Nov.
16, 2010) (finding that California did not have a materially greater interest where the agreement
was signed, the agreement was to be performed, the wrong occurred, and Plaintiff resided in
Pennsylvania).

Consequently, the Court applies Texas law in determining the enforceability of the
arbitration agreement and the class action waiver pursuant to the parties' choice-of-law provision.[3]

---

[2] Accordingly, the Court does not need to reach the issue of whether Texas law is fundamentally contrary to California law.  *See Abat*, 2010 WL 11465416, at *1-2.

[3] Even if the Court found that the choice-of-law provision is unenforceable, the Court would apply Texas law under "the comparative impairment approach to the governmental interest analysis" because Texas's "interests would be more significantly impaired if the Court were to apply California law."  *Abat*, 2010 WL 11465416, at *3 (citing *Bernard v. Harrah's Club*, 546 P.2d 719, 722-23 (Cal. 1976); *Hurtado v. Superior Court*, 522 P.2d 666, 669 (Cal. 1974)).  Texas's interest in enforcing agreements that are between its citizens and that were negotiated, entered into,

### B.    *Arbitration Agreement*

In Texas, "[a]rbitration is . . . governed by two fundamental principles: arbitration agreements are contracts that must be enforced according to their terms, and a party cannot be compelled to arbitrate any dispute absent an agreement to do so." *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019) (citations omitted). "Ordinarily, a party seeking to compel arbitration must show that (1) a valid, enforceable arbitration agreement exists and (2) the claims asserted fall within the scope of that agreement." *Hawdi v. Mutammara*, No. 01-18-00024-CV, 2019 WL 3418506, at *3 (Tex. App.—Houston [1st Dist.] July 30, 2019, no pet.). "It is well-settled, however, that parties can agree to delegate to the arbitrator the power to resolve gateway issues regarding the validity and enforceability of the arbitration agreement; in that event, the entire matter of arbitrability is transferred from the trial court to the arbitrator." *Firstlight Fed. Credit Unit v. Loya*, 478 S.W.3d 157, 164 (Tex. App.—El Paso 2015, no pet.) (citation omitted). "When faced with such an agreement, courts have no discretion but to compel arbitration unless the [arbitration] clause's validity is challenged on legal or public policy grounds." *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018) (citation omitted). "So the proper procedure is for a court to first determine if there is a binding arbitration agreement that delegates arbitrability to the arbitrator. If there is such an agreement, the court must then compel arbitration so the arbitrator may decide gateway issues the parties have agreed to arbitrate." *Id.*

---

and largely performed in Texas, are significantly more compelling than California's interest in not enforcing allegedly "unconscionable class arbitration waivers." *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 491 (9th Cir. 2009) (quoting *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1083 (9th Cir. 2008) (per curiam)). This is especially true given that the Northern District of California has already concluded that "[P]laintiffs' own contacts with [California] are dubious." ECF No. 48 at 6.

In the present case, the Court finds that, pursuant to Texas law, the parties entered into an arbitration agreement. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that courts "apply ordinary state-law principles that govern the formation of contracts"); *GJ Partners, LTD v. Cima Contractors, LLC*, No. 05-18-01412-CV, 2020 WL 400180, at *3 (Ct. App.—Dallas Jan. 23, 2020, no pet.) ("Before a court can compel arbitration, it must first determine that a valid arbitration agreement exists between the parties." (citations omitted)). Defendants filed the arbitration agreements that appear to be signed by Plaintiffs, *see* Defs.' App. 15-17, 21-28, 33-40, 46, 59-66, which is "evidence of a valid and enforceable agreement." *Atlas Trading Conglomerate Inc. v. AT&T Inc.*, Civ. A. No. 3:15-CV-0404-K, 2016 WL 5870857, at *4 (N.D. Tex. Oct. 5, 2016) (citation omitted). Furthermore, Plaintiffs do not dispute that they entered into the Arbitration Agreements.

Rather, Plaintiffs contend that the Court should not enforce the Arbitration Agreements because: (1) the choice-of-law provision contained therein "[p]urports to eliminate all of the claims Plaintiffs bring in this case,"[4] Resp. 2-8; and (2) the agreements are unconscionable because they are contracts of adhesion, they were signed "[d]ue to [o]ppression," Defendants did not provide Plaintiffs with "the rules that would govern any arbitration," the agreements permit Defendants to seek certain exclusive remedies, and require the parties to attempt to resolve the dispute through direct negotiation, *id.* at 9-11, 17-23. However, these arguments do not challenge the validity of contract formation, but "represent affirmative defenses against the enforcement of a presumptively formed contract." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 396 (5th Cir. 2019) (quoting *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 129 (Tex. App. 2018)).

---

[4] "Plaintiff[s] identif[y] no reason why [their] objections to the application of [Texas] law and [its effects] on the available remedies cannot be made to the arbitrator." *Bhandara Family Living Tr. v. Underwriters at Lloyd's, London*, No. CV H-19-968, 2020 WL 1482559, at *4 (S.D. Tex. Feb. 20, 2020).

The parties expressly delegated the determination of any issues related to "interpretation, applicability, [or] enforceability" of the Arbitration Agreements to the arbitrator, *see* Defs.' App. 23, 25, 61, and the Court is not at liberty to "rewrite the parties['] contract []or add to its language," *Robinson*, 590 S.W.3d at 534; *see also Firstlight Fed. Credit Union*, 478 S.W.3d at 164 ("[A] delegation clause providing that the parties agreed to arbitrate 'any and all claims challenging the validity or enforceability of this Agreement [in whole or in part]' clearly and unmistakably provide[s] for issues of validity and enforceability to be determined by the arbitrator." (citation omitted)). This is especially true given that Plaintiffs' arguments pertain to the entirety of the agreements—i.e., including the choice-of-law provision, the Class Action Waiver, etc.—and not solely to the arbitration clause. *See RSL Funding, LLC*, 569 S.W.3d at 124 ("Classic contract defenses such as unconscionability, illegality and fraudulent inducement" are decided by the arbitrator "if they are alleged only against the contract as a whole.").

Furthermore, the Court declines Plaintiffs' invitation to reach these gateway issues by finding that any conclusion other than that the agreements are unconscionable is "wholly groundless." Resp. 5 (quoting *Douglas v. Regions Bank*, 757 F.3 460, 462-64 (5th Cir. 2014)). The Supreme Court in *Henry Schein, Inc. v. Archer & White Sales, Inc.* rejected the "wholly groundless" exception, and directed courts to enforce the parties' agreement even if the court believes "the arbitrator will inevitably conclude that the dispute is not arbitrable . . . ." 139 S. Ct. 524, 530 (2019). While *Henry Schein* involved the Federal Arbitration Act, the "wholly groundless" exception does not appear in the Texas Arbitration Act, and "Texas courts look to federal case law construing the FAA for guidance because of the similarities between the two acts." *Rodriguez v. Tex. Leagure Brewing Co.*, 586 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] July 9, 2019, pet. denied). Pursuant to *Henry Schein*, therefore, the Court finds that all issues

related to the interpretation, applicability, or enforceability of the Arbitration Agreements, will be decided by the Arbitrator.[5]

### C. *Class Action Waiver*

Importantly, the Arbitration Agreements reserve one gateway issue for the Court's determination—"the applicability, enforceability, or formation of th[e] Class Action Waiver." Defs.' App. 23, 25, 61; *see also Robinson*, 590 S.W.3d at 529 ("[W]hether the parties have agreed to arbitrate disputes as a class is a threshold question of arbitrability."). Plaintiffs challenge the enforceability of the Class Action Waiver under California law. *See* Resp. 12-15. The Court, however, has determined that Texas law, rather than California law, governs this dispute. *See supra* § III(A). Under Texas law:

> "[C]lass action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment." The class action furnishes "an efficient means for numerous claims with a common complaint to a remedy '[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages'" However, . . . the class action may not "'be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action.'" "[T]here is no entitlement to proceed as a class action."

*Ranzy v. Extra Cash of Tex., Inc.*, Civ. A. H-09-3334, 2011 WL 13257274, at *7 (S.D. Tex. Oct. 14, 2011) (first and third alterations added) (citations omitted). Thus, Texas courts routinely compel cases to individual arbitration where, as here, "[t]he clear language of the parties'

---

[5] This includes Plaintiffs' objections based on the application of California Labor Code § 229 that purports to prohibit arbitrability of certain claims, *see* Resp. 22, and the determination of arbitrability of any claim brought under California's Private Attorneys General Act, *see id.* at 25, because the Arbitration Agreements contain clear and unmistakable delegation provisions. *See Ratajesak v. New Prime, Inc.*, No. SACV189396DOCAGRX, 2019 WL 1771659, at *6 (C.D. Cal. Mar. 20, 2019); *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 946 (N.D. Cal. 2015). Additionally, the Court does not resolve Plaintiffs' challenges to the enforceability of the delegation clause because those challenges "relate[] to the arbitration agreement as a whole," and so "must be directed to arbitration." *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 808 (Tex. App.—El Paso 2012, no pet.) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)); *see also* Resp. 16 (admitting that "the grounds for procedural unconscionability discussed below apply with equal force to the [Arbitration Agreements'] delegation provision as to the arbitration provision . . . ."); *id.* at 23 (arguing that "because *the contract as a whole is unconscionable* . . . a delegation clause . . . is substantively unconscionable as well" (emphasis added)).

agreement expressly forbids class" actions. *NCP Fin. Ltd. P'Ship v. Escatiola*, 350 S.W.3d 152, 155 (Tex. App.—San Antonio 2011, no pet.); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 722 (N.D. Tex. 2013). In fact, Plaintiffs do not contest the validity of the Class Action Waiver under Texas law.[6] "Absent any argument or basis to hold the class action waiver provision internally invalid, this [C]ourt must conclude it applies . . . ." *Cash Biz, LP v. Henry*, 539 S.W.3d 342, 354 (Tex. App.—San Antonio 2016, pet. filed), *aff'd*, 551 S.W.3d 111 (Tex. 2018).

## III.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Compel Individual Arbitration. Any challenges to the enforceability or scope of the Arbitration Agreements must be decided by the arbitrator. This action will be stayed and administratively closed pending the outcome of arbitration. The Court directs the Clerk of Court to administratively close this case until such time as the Court orders it to be reopened.

**SO ORDERED.**

SIGNED May _5_, 2020.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

---

[6] The Court further finds that Plaintiffs did not demonstrate that the Class Action Waiver is unenforceable under California law, which requires Plaintiffs to present "specific, individualized, and precise" evidence, *Truly Nolen of Am. v. Superior Court*, 208 Cal. App. 4th 487, 511 (2012), of, among other factors, "the potential for retaliation against members of the class," *Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal. App. 5th 784, 792 (2018) (citing *Gentry v. Superior Court*, 165 P.3d 556, 568 (Cal. 2007)). The sole evidence of "potential retaliation" in this case is a declaration from Plaintiffs' counsel that states that putative class members in unspecified cases have refused to give a 'written statement supporting the putative class claims because they fear retaliation from their employer." Decl. of Nicholas Conlon ¶ 2. The Court finds that this declaration merely speculates regarding putative class members in the present case, and does not amount to specific, individuated, and precise evidence of potential retaliation. *See Conde v. Open Door Mktg., LLC*, Case No. 15-CV-04080-KAW, 2017 WL 5172271, at *10 (N.D. Cal. Nov. 8, 2017) ("[G]eneralized statements lacking supporting evidence do not satisfy the *Gentry* test.").